```
UNITED STATES DISTRICT COURT                    ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                :
VICTOR LAHOZ,                                   :
                                                :
                        Plaintiff,              :       MEMORANDUM
                                                :       AND ORDER
        - against -                             :
                                                :
MICHAEL J. ASTRUE,                              :       09-CV-4523 (JG)
Commissioner of Social Security,                :
                                                :
                        Defendant.              :
---------------------------------------------------------------X
```

A P P E A R A N C E S:

    RICHARD P. MORRIS
        Klein, Wagner & Morris
        227 Broadway, 9th Floor
        New York, NY 10007

        – and –

    SARAH H. BOHR
        Bohr & Harrington, LLC
        2337 Seminole Road
        Atlantic Beach, FL 32233
        *Attorneys for Plaintiff*

    LORETTA E. LYNCH
        United States Attorney
        225 Cadman Plaza East
        Brooklyn, NY 11201
    By:    Seth D. Eichenholtz
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Victor Lahoz brings this action seeking review of a decision of the Commissioner of Social Security denying him benefits. The Commissioner now moves for judgment on the pleadings affirming that decision. Lahoz cross-moves for judgment on the pleadings, either remanding the case to the agency solely for the calculation of benefits, or, in the alternative, for

further proceedings. Oral argument was heard on August 6, 2010. For the reasons stated below, the Commissioner's motion is denied, Lahoz's motion for remand solely for the calculation of benefits is also denied, and Lahoz's motion for remand to the agency for further proceedings is granted.

BACKGROUND

Lahoz was born in 1955 in the Dominican Republic. He moved to the United States and became a legal permanent resident in 1976. He obtained a GED and worked as an electrician repairing cell phones and beepers, and was also employed as a manager of electronic equipment facilities. He worked as a freelance photographer and videographer at weddings and other events until 2001. According to Lahoz, he stopped working because he frequently suffers from sudden convulsive epileptic seizures.

Dr. Alveris Molina began treating Lahoz in October 2003 and continued to treat him until after he filed the application for benefits under consideration here. He treated Lahoz for various ailments, including seizure disorder, "anxiety-depression," diabetes, and hypertension. Tr. 332. The record also reveals that Lahoz has a long history of lower back pain. Though Dr. Molina's treating notes are not part of the record, he did respond to a Residual Functional Capacity assessment questionnaire. Among other things, Dr. Molina estimated that Lahoz could "occasionally" lift and carry 20 lbs. of weight in a competitive work situation and could only "rarely" lift and carry 50 lbs. Tr. 631. More importantly, Dr. Molina's answers to the questionnaire noted that Lahoz suffered from depression and anxiety, and that "emotional factors contribute to the severity of [Lahoz's] symptoms and functional limitations." Tr. 629. Dr. Molina gave Lahoz a "guarded" prognosis, and stated that Lahoz was "incapable of even 'low stress' jobs" because "stress increases [the symptoms of] seizure disorder." *Id.*

Dr. Molina referred Lahoz to Dr. Anil Kapoor, a neurologist, so that Lahoz could receive treatment for his epilepsy. In March of 2006, Dr. Kapoor advised that Lahoz likely suffered from a "seizure disorder of a generalized type," and scheduled a follow-up appointment with Dr. Virginia Moreno, an epileptologist. In April 2006, Dr. Moreno diagnosed "primary generalized epilepsy" and prescribed Depakote, an anti-epilepsy drug.

Hospital notes made part of the record before the Commissioner show that Lahoz was treated in the emergency department at Elmhurst Hospital several times in 2007, 2008, and 2009. On each occasion, Lahoz was admitted after a convulsive seizure. Notes from September 8, 2008 report Lahoz as stating that he "[u]sually has similar seizures 1-4 times/month," but he admitted "to skipping doses of Depakote because of side effects." Tr. 379, 390. Lab tests and radiology reports revealed levels of valporic acid lower than would be expected for someone taking Depakote as prescribed.

After he applied for benefits, Lahoz underwent a neurological exam at the request of a state agency with Dr. David Finkelstein on April 24, 2007. Dr. Finkelstein's conclusion was that Lahoz suffered from seizure disorder and spinal stenosis, and that the prognosis was "fair." According to Dr. Finkelstein, Lahoz should "avoid heights and not operate heavy machinery with his seizures" and should "avoid situations where he may be injured should he have a seizure." *Id.* Additionally, Dr. Finkelstein found that Lahoz had "some mild limitations in ability to ambulate" and that "frequent pain may limit ability to sustain activity." *Id.*

Lahoz applied for SSI benefits on February 21, 2007. He stated that he was disabled from February 1, 2007, due to pain, convulsions, and black-outs. Following the initial denial of his claim, Lahoz requested a hearing, which was held on March 17, 2009 before Administrative Law Judge ("ALJ") Jeffrey Jordan.

3

At the hearing, Lahoz was assisted by a paralegal from Queens Legal Services. *See* Tr. 18 & 140.[1] For the most part, he spoke through a Spanish interpreter. Lahoz testified that he "had to leave work because of the epilepsy," and that after he left work "the epilepsy attacks increased." Tr. 36. He stated that he had convulsive seizures that caused him to lose consciousness and bite his tongue to the point that it bled. The loss of consciousness attendant on a seizure lasted more than half an hour. Because of the seizures, Lahoz said, he was afraid to go out alone. Lahoz stated that he had seizures "once or twice a month," and that he had been hospitalized as a result of epileptic attacks "more than 50 times." Tr. 40-41.

Lahoz stated that even though he took his medication as prescribed by his doctor, he was often found on the street and taken to the hospital having suffered a seizure. Lahoz testified that he did not drink alcohol, but that people "are always thinking [he's] a drunk[]" when he has a seizure. Tr. 42. When the ALJ confronted Lahoz with an Elmhurst hospital report that suggested Lahoz was intoxicated with alcohol when admitted for a seizure, Lahoz explained that he had taken Nyquil for flu a few hours before the seizure. Lahoz also stated that the most he could lift was a "container of milk that is like 12 pounds or so." Tr. 44.

Dr. Gerald Winkler, who had no prior experience with Lahoz, testified at the hearing as a medical expert. Having reviewed the medical records, he agreed that Lahoz had epilepsy. But Dr. Winkler noted "some concerns in the record about the reliability of medication taking," and pointed out that some of the test results showed lower valporic acid levels than one would expect from a patient who was taking the prescribed amount of medication. Tr. 47. Dr. Winkler also noted that Lahoz himself indicated to one of his doctors that he had skipped doses

---

[1] References in the form "Tr. __" are to the transcript of the administrative record.

due to side effects. On the question of alcohol, Dr. Winkler found that the involvement of alcohol in the seizures was not established by the medical records.

Finally, the ALJ heard from a vocational expert, Donald Slive. The ALJ asked him to assume a hypothetical individual the same age as Lahoz, with Lahoz's education and work experience, who could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand and walk six hours in an eight-hour work day, sit for the same period, but who had to avoid unprotected heights and balancing. In response to the ALJ's questions, the vocational expert stated that Lahoz was unable to perform his past work, which required the use of a ladder, but identified available jobs at the medium or light exertional level that, in Slive's opinion, Lahoz could perform: hand packer, final assembler, and assembler of small products. Tr. 51-52. When asked by Lahoz's representative whether the employer would require the employee "to have the ability to concentrate on the job," the vocational expert replied that the jobs required the employee to be "90% on task." Tr. 53.

At the conclusion of the hearing, Lahoz's representative stated that Lahoz suffered from "seizures[], anxiety, depression, dizziness, hypertension," and that he was unable to communicate in English. She stated that Lahoz met listing sections 11.02 (convulsive or grand mal epilepsy) and 12.06 (anxiety-related disorders).

ALJ Jordan issued a decision denying Lahoz's application for benefits on April 17, 2009. The ALJ concluded that Lahoz suffered from a seizure disorder that rendered him unable to do his past work as a photographer, but that he retained the residual functional capacity for a restricted range of medium work. Tr. 19-28. Lahoz requested review of the ALJ's hearing

decision in May 2009; the Appeals Council denied that request on August 14, 2009. This petition for review of the Commissioner's decision was filed on October 8, 2009.[2]

## DISCUSSION

A.   *The Standard of Review*

In order to be found eligible for disability benefits, Lahoz must prove before the Commissioner that, "by reason of [a] medically determined physical or mental impairment ... which has lasted ... for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ... ." 42 U.S.C. § 423(d)(2)(A).[3]

The Commissioner employs a five-step analysis in evaluating disability claims. *See DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1520 (2005). First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities. If the claimant suffers from a severe impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant has a listed impairment, the Commissioner will consider him disabled without considering vocational factors

---

[2]   In addition to seeking review of the decision at issue in this case, Lahoz filed a subsequent application for benefits. The Commissioner granted that application, finding that Lahoz was disabled as of September 30, 2009. This case pertains to the period from February 21, 2007 to September 29, 2009.

[3]   Substantial work activity is defined as work that involves significant physical or mental activity. 20 C.F.R. § 404.1572. Work can be considered substantial even if it is done on a part-time basis or if less money is earned or less responsibility is associated with it than with previous employment. *Id.* Activities such as household tasks, hobbies, therapy, school attendance, club activities, and social programs are generally not considered to be substantial gainful activity. *Id.*

such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth question is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner must prove the final one. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

On review, the question presented is whether the Commissioner's decision that Lahoz is not entitled to disability benefits for the relevant period is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 31 (internal quotation marks omitted).

B.  *The ALJ's Reasoning*

ALJ Jordan, whose decision constitutes the Commissioner's final decision in this case, followed the five-step procedure outlined above. At the first step, the ALJ found that Lahoz had not engaged in any substantial gainful activity since the application. The ALJ then found at the second stage that Lahoz had one severe impairment – a seizure disorder – that significantly limited his ability to do basic work activities.

Proceeding to the third stage, the ALJ found that Lahoz's seizure disorder did not meet one of the impairments listed in the regulations. The ALJ specifically mentioned sections 11.02 and 11.03 of the listing. Among other things, section 11.02 requires convulsive seizures "occurring more frequently than once a month in spite of at least 3 months of prescribed

7

treatment." Section 11.03 requires non-convulsive seizures "occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment." The ALJ found that he was unable to find that Lahoz met either of these listings. Noting that Dr. Winkler expressed "some concerns … about the reliability of [Lahoz's] medicine taking," the ALJ concluded that the record showed that Lahoz "stopped taking medications due to side effects." Tr. 21. The ALJ also alluded to a "question about alcohol." Tr. 21. The ALJ then stated: "If the claimant complied continuously with medications and continued to have seizures, then he would meet the listing, provided that he complied with three straight months of medications and still had seizures at the rate to which he testified. However, the record does not document the rate of seizures to which the claimant testified." *Id.* For those reasons, the ALJ found at step three that Lahoz's impairment did not meet any listing.

Next, the ALJ conducted a review of the evidence in the record and concluded that Lahoz possessed the residual functional capacity to perform a restricted range of medium work as defined in 20 C.F.R. 416.967(c). The judge recited the documentary evidence in the record at length. In light of this evidence, the ALJ agreed that Lahoz's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 26. However, he found that Lahoz's statements "concerning the intensity, persistence and limiting effects of these symptoms" were not credible to the extent they conflicted with the ALJ's residual functional capacity assessment. *Id.* The ALJ found that "[t]he medical records simply fail to confirm the accuracy of the claimant's assertion and hearing testimony." *Id.* In particular, the ALJ found that "the record reflects that the claimant had fewer seizures than he testified." *Id.* Examinations of Lahoz were "essentially normal," his medical treatments were "conservative,"

8

and he had been hospitalized "only on rare occasions." *Id.* The ALJ also noted "inconsistencies regarding the claimant's alcohol use." *Id.*

The ALJ stated that he had given "some weight" to Dr. Molina's opinion, but also found that Dr. Molina's opinion was "not entirely consistent with the overall record." Tr. 26. Specifically, the ALJ noted that Dr. Molina opined that Lahoz "could frequently lift/carry ten pounds and occasionally lift/carry twenty pounds," which the ALJ found to be "inconsistent with the record." *Id.* The ALJ gave "significant weight" to the opinion of Dr. Finkelstein. *Id.*

Having conducted this review of the medical evidence, the ALJ concluded that Lahoz was unable to do his past work as a photographer because that work "requires the use of ladders." Tr. 27. But at the fifth stage, the ALJ found that there are jobs that exist in the national economy that Lahoz could perform. *Id.* For that conclusion, the ALJ relied on the "credible testimony of the vocational expert" that a person of Lahoz's age, with his education, work experience, and residual functional capacity could perform available jobs, including "packer, hand," "final assembler," and "assembler of small products." Tr. 28.

C.  *Lahoz's Challenges to the ALJ's Decision*

Lahoz contends that the ALJ erred by: (1) failing to explain the decision to reject the opinion of the treating physician, (2) failing to develop the record with regard to his mental impairments, and (3) making an unwarranted adverse credibility determination. He seeks an order remanding the case for further proceedings so that these errors may be corrected. Lahoz also argues that the record, even as it stands, compels the conclusion that he is disabled, and on that basis he seeks an order remanding the case for calculation of benefits.

1. *Lahoz's Procedural Challenges to the ALJ's Decision*

   a. *The ALJ's Decision to Reject Dr. Molina's Opinion*

In concluding that Lahoz was not disabled, the ALJ stated that he gave "some weight" to Dr. Molina's opinion, but he rejected that opinion insofar as Dr. Molina concluded that Lahoz could not work. As explained below, the ALJ's failure to give adequate reasons for rejecting Dr. Molina's opinion requires remand to the agency.

Dr. Molina was Lahoz's treating physician. Under the regulations, a treating physician's opinion about a claimant's impairments is entitled to "controlling weight" if it is "well [] supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (upholding these regulations). The Commissioner must set forth "good reasons" for refusing to accord the opinions of a treating physician controlling weight. He must also give "good reasons" for the weight actually given to those opinions if they are not considered controlling. 20 C.F.R. § 404.1527(d)(2); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician.").

Dr. Molina stated that Lahoz was incapable of even low stress jobs, because stress would exacerbate his seizure disorder. If Dr. Molina is right, this factor would dramatically affect Lahoz's residual functional capacity to work. Though the ALJ's opinion recites this

10

important piece of evidence, there is no indication that he actually considered it when determining Lahoz's ability to work, and in fact he appears to have rejected it. The ALJ asserted that Dr. Molina's opinion was "not entirely consistent with the overall record." Tr. 26. But apart from this bare assertion, the only reason the ALJ gave for discarding the treating physician's opinion was that he disagreed with Dr. Molina's estimate of Lahoz's ability to lift and carry weights, preferring Dr. Finkelstein's assessment in this respect. This disagreement between the doctors concerned a matter of comparatively little relevance to Lahoz's ability to work, and it does not constitute a sufficient basis for rejecting the treating physician's opinion concerning the effect of stress on Lahoz's epilepsy.

The ALJ's failure to give proper consideration to Dr. Molina's opinion warrants remand. On remand, the ALJ should consider that opinion, should determine whether it is entitled to controlling weight, and, if not, should set forth comprehensive reasons explaining the weight to which Dr. Molina's opinion is entitled. If appropriate, the ALJ should develop the record by seeking further medical opinion concerning the effect of work-related stress on Lahoz's convulsive epilepsy.

   b. *The ALJ's Failure to Develop the Record Regarding Mental Impairments*

Lahoz also contends that the ALJ failed in his duty to develop the record because he did not obtain an opinion about Lahoz's mental impairments from a qualified psychiatrist or psychologist. I agree.

A hearing on disability benefits is a non-adversarial proceeding, and the ALJ has an affirmative duty to develop the administrative record. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1982). More specifically, the Social Security Act provides that "in any case where there is evidence which indicates the existence of a mental impairment," the Commissioner may decide that the applicant is not disabled only "if the Commissioner of Social Security has made

11

every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h).

The main focus of the hearing was the effect of Lahoz's seizures, and the medication he was taking for them, on his ability to work. Nevertheless, there was evidence in the record before the ALJ that indicated that Lahoz was suffering from anxiety and depression. Dr. Molina indicated that he was treating Lahoz for these conditions, and the medications he prescribed included Paxil, a drug used to treat depression, panic disorders, and social anxiety. In addition, the record contains a letter written by a psychotherapist indicating that Lahoz had received treatment for "[m]ood disorder due to medical condition." Tr. 589. Though the record is not clear, the evidence suggests that Lahoz's anxiety disorder is partly inspired by his entirely legitimate fear that he could suffer a seizure at any time. It also appears from the record that Lahoz's anxiety and seizure disorder may work together to create a vicious circle: Lahoz is anxious about his seizures; that anxiety increases his susceptibility to seizures; and so on.

The lack of evidence with respect to Lahoz's mental condition impaired the ALJ's analysis of Lahoz's capacity to work. The point is illustrated by the colloquy between the ALJ and the vocational expert, on whose answers the ALJ based his decision that Lahoz was capable of doing jobs available in the national economy. The ALJ asked the vocational expert to consider a hypothetical individual who lacked many of Lahoz's salient characteristics, including the anxiety and depression that he apparently suffers from as a result of his seizure disorder. The ALJ's questioning of the vocational expert leapt from the abilities of the hypothetical person to those of Lahoz, as if they were the same person. The Second Circuit has pointed out the problems with this way of proceeding, counseling that a "vocational expert's testimony is only

useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).

On remand, the ALJ should develop the record further by gathering more evidence as to Lahoz's mental condition. After doing so, the ALJ should consider the mutually reinforcing effects of Lahoz's anxiety disorder and his seizure disorder on his ability to work.

      c.    *The Credibility Finding*

The finding that Lahoz was not disabled was based partly on the ALJ's decision to reject Lahoz's testimony as to the number and intensity of the seizures he suffered. As explained below, I conclude that the adverse credibility determination was not supported by substantial evidence. On remand, the ALJ should revisit that determination with closer attention to the record.

The ALJ's decision not to credit Lahoz's testimony was based partly on the idea Lahoz has been hospitalized "only on rare occasion for his impediments." Tr. 26. Lahoz's testimony, however makes clear that he often suffers seizures at home without seeking specific medical treatment. It would be unreasonable to require Lahoz to provide specific documentation for each individual seizure. Moreover, the record does not support the ALJ's notion that Lahoz's medical treatment has been "conservative" and that medical examinations "have been essentially normal." Tr. 26. The objective evidence in the record tends to support rather than undermine Lahoz's testimony concerning his epilepsy. Far from establishing that Lahoz's condition is "essentially normal," the reports by his treating physicians show that Lahoz has a seizure disorder and that he has been prescribed an anti-epilepsy drug. Nothing in the medical expert's testimony casts doubt on those physicians' diagnoses.

In addition, the ALJ's credibility determination was apparently influenced by the insinuation that Lahoz's symptoms are, in part, the result of alcohol use. *See* Tr. 26 ("the record

13

reflects the term alcohol intoxication"). However, the only evidence supporting alcohol use is a hospital admission report that seems to be erroneous. Dr. Winkler stated that "the involvement of alcohol abuse cannot be established by the information in these medical records," Tr. 48, and Lahoz has consistently denied using alcohol. To the extent that the ALJ believes nevertheless that Lahoz's limitations are the result of alcohol use, the ALJ should make a finding to that effect, supported by evidence.

2. *The Motion for Judgment Remanding Solely for the Calculation of Benefits*

In order to succeed on his motion for judgment remanding the case solely for the calculation of benefits, it is not sufficient for Lahoz to demonstrate errors in the ALJ's reasoning. Remand for the calculation of benefits is appropriate only when the existing record *compels* the conclusion that the plaintiff is disabled. *Schall v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

As discussed above, the decision to deny Lahoz benefits was affected by procedural mistakes. But in its current state, the record does not compel the conclusion that Lahoz meets any of the listings in Appendix 1 to the regulations. In particular, though Lahoz may well have been suffering from enough convulsive seizures to fit within section 11.02, it is not entirely clear that he was taking his epilepsy medication as prescribed, as required by the listing. And aside from the listing, the conclusion that Lahoz's impairments render him incapable of working is not inescapable. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Secretary for further development of the evidence. On the other hand, we have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose."). I therefore deny Lahoz's motion for remand for calculation of benefits.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings affirming the decision and Lahoz's motion for a remand solely for the calculation of benefits are denied. Lahoz's motion for a judgment remanding for further proceedings is granted. The Clerk of Court is respectfully directed to enter judgment in accordance with this memorandum and order.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 19, 2010
      Brooklyn, New York